Jamari SALLEH, Plaintiff,

v.

Warren M. CHRISTOPHER, Secretary
of State, Defendant.

Civ. A. No. 93–2405 (GK).

United States District Court,
District of Columbia.

Feb. 13, 1995.

Stephen L. Spitz, Kalijarvi & Chuzi, P.C., Washington, DC, for plaintiff.

Susan A. Nellor, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM–OPINION

KESSLER, District Judge.

### I. Introduction

Plaintiff Jamari Salleh was a career (tenured) Foreign Service Officer with the Department of State (hereinafter "the Department"). In 1989, the Department first proposed to separate her from the Foreign Service. In May of 1992, the Foreign Service Grievance Board (hereinafter "the Board") concluded that good cause had not been established for her termination. In June of 1993, the Secretary of State, disagreeing with the Board, issued a Decision and Order separating Plaintiff from the Foreign Service.

The issue now before the Court is whether the Secretary of State has the authority to overrule, or reverse, a decision of the Foreign Service Grievance Board and terminate a Foreign Service Officer after the Board has ruled that cause for separation has not been established by the Department. For the reasons set forth below, the Court concludes that the Secretary did not have the authority to overrule the Foreign Service Grievance Board and terminate Ms. Salleh's employment as a Foreign Service Officer with the State Department.

### II. Statement of Facts [1]

Plaintiff Jamari Salleh had been employed by the Department of State as a Foreign Service Officer from January, 1981 until June 30, 1993. Administrative Record at 74 ("AR"). She was assigned to a salary class in the Foreign Service Schedule and was serving under a career appointment. Although it is undisputed that she was employed by the United States Government for a total of eighteen years, the record does not indicate where she worked before 1981. Af-

fidavit of Jamari Salleh at ¶ 2 ("Salleh Affidavit").

Plaintiff served as a Consular Officer in several overseas posts, as well as Department headquarters, between January, 1981 and June 30, 1993. AR at 74. Her performance as a Consular Officer, with a few exceptions, was exemplary, and her last four performance appraisals were at an extremely high level. AR at 517–530 and 949–953.

In April 1981, after her initial training as a Foreign Service Officer in what is called the Consular cone, a particular area of specialization, she was assigned to the American Embassy in Mexico City. Her official duties included working on the visa line in an extremely busy and contentious working environment and serving as EEO officer. AR 81–82. As part of her responsibilities she handled an EEO case in which it was alleged that the Deputy Chief of Mission was the discriminating official. Although the complainant prevailed, the handling of this case, at a time when Ms. Salleh was one of the most junior Embassy officers, took a personal toll on her, and she began to drink heavily.

Both Ms. Salleh's parents were alcoholics, and her father died of alcohol-related medical problems. She began consuming alcohol at the age of 21. While she now understands that she suffers from the disease of alcoholism, she was unaware of that condition during the 1981–1989 period.

In July, 1983, Plaintiff was assigned as Consular Officer in Montreal. AR 78. During this tour of duty, her alcoholism was exacerbated by a hostile work environment stemming from gossip and misinformation pertaining to the EEO responsibilities she had handled in Mexico City. She was not recommended for tenure.

In January 1984, Plaintiff wrote a letter to the Deputy Assistant Secretary for Mental Health Services of the State Department,

---

1. Pursuant to Fed.R.Civ.P. 56(e), this Court will treat all facts not explicitly denied or disputed as conceded. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Local Rule 108(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). The basic facts of this case are not in dispute.

Paul F. Eggertsen, M.D., complaining of "burn out" and specifically referring to an "alcoholism" problem. AR 82, 475–476, 632, 634. Dr. Eggertsen failed to respond to her letter, until she tried once again to obtain help by calling him on the telephone on March 14, 1984. He then wrote to her recommending that she talk to her supervisor and seek professional counseling concerning her frustrations and problems with her career. AR 477–78.

Despite the fact that provisions of the Foreign Affairs Manual ("FAM") mandate certain steps that should be taken with regard to alcoholic Foreign Service Officers, 3 FAM 695 et seq., the Department took no further action to help Ms. Salleh address her problem.

In August 1985, while in Montreal, Plaintiff filed a discrimination complaint against the Defendant. During the investigation of that complaint, one of the Department's attorneys assigned to its Office of Equal Employment Opportunity and Civil Rights came to the conclusion that Ms. Salleh suffered from an alcohol or other substance abuse problem. Once again, no action was taken with respect to her condition. AR 83, 90.

In 1985, Plaintiff was informed that she would be terminated because she had not been granted "tenure" or career status and was transferred to Washington, D.C. She remained unassigned for four months, during which time she remained at home and became increasingly morose. AR 83, 97–98; Salleh Affidavit ¶ 9. Her active alcoholism increased. It was during this period of time that she falsified two travel vouchers which she later submitted for reimbursement.

In August of 1986, as part of the settlement of her 1985 discrimination complaint, Ms. Salleh was given additional time in which to obtain tenure. She was then assigned as a Consular Officer to the American Embassy in the Dominican Republic. Despite the fact that she continued to consume alcoholic beverages, Plaintiff was evaluated as an "excellent officer", was recommended for tenure by all her supervisors, and ultimately obtained it in November, 1988. AR 517–525,

Thereafter, she was selected to be a supervisor in the consular section of the American Embassy in London, which was a highly competitive position. She was also nominated to attend the Advanced Consular Course which was available only to consular officers considered to be outstanding by the Department.

Plaintiff returned to the United States in January 1989 to take the Advanced Consular Course. AR 84. She was then interviewed by the Office of Inspector General about the two reimbursement vouchers which she had fraudulently submitted in violation of 18 U.S.C. § 287. AR 84. She admitted having filled out and submitted the fraudulent vouchers.

On January 24, 1989, a federal grand jury in the Eastern District of Virginia indicted Plaintiff on two felony counts of submitting false claims against the government in violation of 18 U.S.C. §§ 287, 2. Complaint, ¶ 18; AR 14, 19.

In January 1989, Plaintiff confronted for the first time the fact that she was an alcoholic, Salleh Affidavit, ¶ 13, and on January 30, 1989, contacted the Department's Chief of the Alcohol Awareness Program, George Sweeney, who determined that she was in the middle to late stages of alcoholism. AR 264. On February 5, 1989, Plaintiff was admitted to a residential treatment program at the Caron Foundation, in Wernersville, Pennsylvania, a facility used by the State Department as a referral source for employees with problems relating to alcoholism and substance abuse. AR 264.[2] Upon her successful completion of the program, she was discharged on March 10, 1989. She entered the Aftercare Group Series at Suburban Hospital in Washington, D.C., AR 295, and participated on a weekly basis in the Department's Alcoholics Anonymous program. AR 264.

On March 10, 1989, Plaintiff pled guilty to the second of the two felony counts for which she had been indicted. Complaint, ¶ 18; AR 14, 20, 206–210, 245–249. In April 1989, she was sentenced to a three-year suspended

2. This program, available to Foreign Service Officers, had been in effect since 1972. AR 84–85.

prison term, four years on probation, restitution and a fine. AR 75.[3]

In May 1989, the Department proposed to revoke Plaintiff's security clearance as a result of her conviction. On June 21, 1989, the acting Director General of the Foreign Service, William L. Swing, proposed that Plaintiff be separated from the Foreign Service pursuant to 22 U.S.C. § 4010(a)(1) and Department of State regulations, 3 FAM 767.5, because of her felony conviction. AR 254–257. On August 30, 1989, Plaintiff submitted a written response to the proposed separation arguing that the proposed separation for cause for conduct related to alcoholism would constitute illegal discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). AR 267–283. Subsequently, on December 11, 1989, the Department determined that she should be separated from the Service based on her criminal conviction, AR 258–59,[4] rejecting her claim that her conduct was related to her alcoholism.

A full adversarial hearing was held before the Foreign Service Grievance Board on August 22, 1991. AR 603–876. Plaintiff never disputed that she committed the crime for which she entered a guilty plea. Instead she argued, and the Board agreed, that this conduct, which occurred before she entered treatment, was a result of her alcoholism.

On May 14, 1992, the Board issued a decision that the Department had not established good cause for terminating Plaintiff and to do so was in violation of the Rehabilitation Act. AR 73–107. The Board found that at the time of the acts giving rise to Plaintiff's criminal conviction, she was an active alcoholic, that her criminal acts were a direct result of that alcoholism, that the Department had done nothing to carry out its responsibilities to deal with Plaintiff pursuant to 3 FAM 695, *et seq.*, and that since returning from inpatient treatment she had been continuously employed by the Department and had re-

ceived outstanding performance ratings. Consequently, the Board concluded that the Department did not establish that Ms. Salleh should be separated from the Service for such cause as would promote the efficiency of the service. AR 106–107.

On June 12, 1992, the Secretary filed a "Request for Clarification" with the Board. On August 4, 1992, the Board denied the request and no further action was taken by the Department. From October 1990 until June 30, 1993, Plaintiff was assigned to the Visa Office in Washington, D.C. and continued to receive outstanding evaluations. AR 100–105.

On June 1, 1993, the Secretary of State issued a Decision and Order separating Plaintiff from the Foreign Service for such cause as will promote the efficiency of the Service, effective 30 days from the date of the Order. AR 14–40. On June 30, 1993, the Board advised the Secretary of State that he did not possess the legal authority to terminate Plaintiff under the circumstances of her case. AR 940–946. On July 2, 1993, Plaintiff's salary was discontinued by the Department and she has been unemployed since that time.

On November 23, 1993, Plaintiff filed this suit under the Foreign Service Act of 1980, as amended, 22 U.S.C. § 3901 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, seeking a declaratory judgment that the Board's May 1992 decision is final and enforceable and that the Secretary of State acted *ultra vires* by involuntarily separating her and failing to reinstate her; reinstatement, back-pay, attorney's fees and other related financial compensation; and a writ of mandamus compelling the Secretary of State to implement the decision of the Foreign Service Grievance Board.

On April 20, 1994, the Board stayed its decision on the issue of Plaintiff's entitlement to attorney's fees pending a decision by this

---

**3.** At sentencing, the Department asked for Plaintiff's resignation as a condition of probation. The court declined to grant that request. AR 50, 75, 202.

**4.** The Department concluded that Plaintiff's criminal misconduct was of sufficient severity

and type to disqualify her from service as a Foreign Service Officer, and that the Department had lost all confidence in her judgment, reliability and ability to perform her duties as a Foreign Service Officer. AR 258–59.

Court, unless Plaintiff could show good cause why it should resolve the issue prior to a ruling by the Court.

On September 16, 1994, the parties filed the pending Cross–Motions for Summary Judgment. Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and the applicable case law, the Court concludes, for the reasons stated below, the Plaintiff's motion for Summary Judgment shall be **granted,** and the Defendant's Motion for Summary Judgment shall be **denied.**

## III. *Conclusions of Law*

### A. Standard of Review

■ This issue presented in this case is whether the Secretary of State had the authority, under the governing statutes, to reverse a decision of the Foreign Service Grievance Board that cause for separation of an Officer had not been established, or whether the decision of the Board is final and binding on the Secretary, subject to judicial review under the Administrative Procedure Act.[5] The merits of the Board's decision are not in issue in this proceeding.[6]

Both Plaintiff and Defendant ask the Court to start its analysis by following the time honored principle of giving substantial deference to the agency's reasonable interpretation of the statute it administers.[7] The problem is that Plaintiff contends that the

"agency interpretation" to be deferred to is that of the Board and the Defendant contends that it is that of the Secretary.

■ Resolution of that very issue—whether it is the Secretary's or the Board's construction of the statute that should be deferred to—necessitates a decision on the merits of the underlying issue, i.e., who has the final decision-making authority. For that reason invocation of talismanic phrases (which often fail to illuminate the issues in the context of particular, complex cases) will be of no help. However, as Chief Judge Edwards said when interpreting the same provision of the Act in *Costello v. Agency for International Development*, 843 F.2d 540, 542 (D.C.Cir.1988),

> [t]his case presents "a pure question of statutory construction," *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), with respect to which our task is to determine the intent of Congress.

Moreover, even if the Foreign Service Act is "silent or ambiguous with respect to the specific issue",[8] *any* construction—whether the Secretary's or the Board's—would have to be rejected if it was not "rational and consistent with the statute," *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987).[9]

---

**5.** The government has stated it succinctly in its Opposition to Plaintiff's Motion for Summary Judgment, at p. 2: "The issue in this case is who has the final decision-making authority in separation for cause cases under the Foreign Service Grievance Board."

**6.** On October 27, 1994, one year after Ms. Salleh filed the present lawsuit, the Secretary of State filed 94CVo2341, against Ms. Salleh and the Foreign Service Grievance Board, seeking (1) a declaratory judgment that the Board's determinations of May 14, 1992, and August 2, 1992, were without cause, arbitrary and capricious, and an abuse of discretion, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, 706; (2) a declaratory judgment that the Secretary of State properly determined that there was cause to separate Ms. Salleh; and (3) an injunction against the Board's order to the Department to pay Ms. Salleh's attorney's fees and expenses. The merits of the Board's decisions will be in issue in that proceeding.

Other than file the complaint, the government has taken no action in that case.

**7.** *See Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and *International Union, UAW v. OSHA*, 938 F.2d 1310, 1311 (D.C.Cir. 1991).

**8.** *Chevron USA v. Natural Resources Defense Council, supra*, 467 U.S. at 843, 104 S.Ct. at 2782.

**9.** In this regard, the Court would note that the Secretary makes much of the fact in his briefs that the Department has consistently, both before and after enactment of the particular statutory sections in question in this case, followed the same interpretation of the Act, namely that he, and not the Board, possesses the power to make the final decision on separations for cause. There is no dispute that the Department has been consistent in its legal analysis. But if that underlying legal analysis has been flawed, the fact of consistency, in and of itself, is of no moment.

■ In short, the touchstone of the Court's analysis of the conflicting interpretations of the Foreign Service Act offered by the Secretary and the Board is whether the interpretation "is reasonable, consistent with the statutory purpose, and not in conflict with the statute's plain language," *Coal Employment Project v. Dole,* 889 F.2d 1127, 1131 (D.C.Cir.1989).

## B. Separation for Cause Under Section 610 of the Act

■ Section 610(a) of the Foreign Service Act [10] governs the issue of separation for cause. It first gives the Secretary, in Section 610(a)(1), the authority to

separate any member from the Service for such cause as will promote the efficiency of the Service.

■ It then proceeds, in Section 610(a)(2), to set forth the specific procedures to be followed in processing Section 610(a)(1) terminations. In particular it provides:

A member of the Service who is a member of the Senior Foreign Service or is assigned to a salary class in the Foreign Service Schedule and who either (A) is serving under a career appointment, or (B) if separation is to be by reason of misconduct, is serving under a limited appointment, shall not be separated from the Service under this section until the member has been granted a hearing before the Foreign Service Grievance Board and the cause for separation established at such hearing, unless the member waives in writing the right to a hearing. If such cause is not established at such hearing, the Grievance Board shall have the authority to direct the Department to pay reasonable attorneys fees to the extent and in the manner provided by section 4137(b)(5) of this title. The hearing provided under this paragraph shall be in accordance with the hearing procedures applicable to grievances under section 4136 of this title and

shall be in lieu of any other administrative procedure authorized or required by this or any other law.

There is no dispute that Ms. Salleh's case is governed by Section 610(a)(2). Since she was "assigned to a salary class in the Foreign Service Schedule", was "serving under a career appointment", and did not "waive ... in writing the right to a hearing", she was clearly entitled to such hearing before the Foreign Service Grievance Board.

■ Section 610(a)(2) then mandates that there shall be no separation "from the Service under this section *until* the member has been granted a hearing before the Foreign Service Grievance Board *and* the cause for separation established at such hearing," (emphasis added). Thus, the statute establishes two prerequisites to separation for cause: there must be a hearing [11] and the cause for separation must be established at that hearing. Until those two requirements are satisfied, "[a] member of the Service ... shall not be separated".

■ In this case one of those prerequisites was satisfied and one was not. The member, Ms. Salleh, was granted a hearing by the Board. However, the second statutorily mandated requirement was not satisfied since the Board specifically found that cause for separation was not established at the hearing. The Board also exercised its statutory authority under Section 610(a)(2) to order the payment of reasonable attorneys fees since the requisite cause for separation had not been established.

In short, a straightforward reading of the clear language of Section 610(a)(2) demonstrates that the Department has failed to meet one of the two statutory prerequisites for separation of a Foreign Service Officer for cause.

Moreover, Section 610—which it must be remembered is entitled "Separation for cause" and therefore presumably deals with

---

**10.** The Foreign Service Act of 1980 (Pub.L. No. 96–465, 94 Stat. 2071 *et seq.*) is codified at 22 U.S.C. § 3901 *et seq.* For ease of reading, the Court will refer to the internal Sections of the Act itself rather than giving duplicative U.S.C. cites throughout the opinion.

**11.** Section 610(a)(2) makes it clear that this hearing "shall be in accordance with the hearing procedures applicable to grievances under Section 4136 of this title."

the subject in its entirety—contains no provision whatsoever for review or reversal of the Board's decision by the Secretary in separation for cause cases. Nor is there any language in Section 610(a)(2) which suggests that the Board's decision is not final and binding in separation for cause cases.

Indeed, Section 610(a)(2) specifically authorizes the Board "to direct the Department to pay reasonable attorneys fees" if "cause is not established at such hearing". This authorization would make no sense if Congress intended that the Secretary could later overturn the Board's determination that no cause had been established at the hearing.

Finally, subsection (3) of Section 610(a), which deals with suspension of a member by the Secretary in a particular type of separation for cause situation,[12] makes it clear that despite suspension by the Secretary, the suspended employee is "subject to reinstatement with back pay if cause for separation is not established in a hearing before the Board". If the Board has authority to overrule the Secretary's suspension of an employee and reinstate that officer when it finds that cause for separation has not been established, it surely must have the same final authority with regard to the far more drastic step of termination.

The government's response to Plaintiff's Section 610(a)(2) argument would make a nullity of the statutory pre-requisites to separation for cause. Essentially, the government would like the Secretary to play the role of both prosecutor and judge at the hearing before the Foreign Service Grievance Board.

In its Opposition to Plaintiff's Motion for Summary Judgment, the government contends (at pp. 3–4) that:

[t]he plain language of the statute, however, does not establish as a prerequisite to the Secretary's authority that *the Board make a finding* as to whether cause for separation exists. In fact, the statute does not even require the Board to make a finding. Rather, the plain language of the

statute requires that "cause for separation be established." This can be accomplished at the hearing without an explicit finding by eliciting facts from witnesses or documentary evidence. (emphasis in original).

At oral argument, government counsel emphasized the primacy of the Board's fact-finding role under Section 610 and reiterated its view that cause for separation could be "established" by simple presentation of facts by the Secretary, rather than by a decision or findings of the Board. During a colloquy with the Court, the government explained its position: "That's part of our argument, Your Honor. [Section 610(a)(2)] does not require a finding by the Foreign Service Grievance Board, a decision ... There's nothing that's in the statute that requires them [the Board] to make a decision ... in our opinion, *the role of the Board in this provision is to elicit what the cause for termination is.*" (Tr. pp. 16–17, Oral Argument, January 26, 1995. (emphasis added).

Thus, according to the government's view, the Board would merely hold a hearing, receive evidence, sit there like the now-famous "potted plant", and cause would be established in some metaphysical fashion by the mere taking in of the Secretary's evidence.

■ This interpretation of the statute simply makes no sense. Given the government's reading of Section 610(a)(2), what would be the purpose of holding any hearing at all if the Board was not to reach a decision on whether separation for cause had been established? Section 610(a)(2) directs that the hearing "shall be in accordance with the hearing procedures applicable to grievances" under section 1106. Those procedures include the right of the grievant and his or her collective bargaining representative to be present, the right to examine and cross-examine witnesses, and the preparation of a verbatim transcript. In particular Section 1106(7) states that the Board may "*act* by or through panels or individual members designated by the Chairperson" (emphasis added).

---

**12.** Section 610(a)(3) covers suspension "where there is reasonable cause to believe that a member has committed a crime for which a sentence of imprisonment may be imposed, and there is a nexus to the efficiency of the Service". All parties agree that this provision does not apply to this case.

When Section 610, and Section 1106 to which it refers, are read together, it is perfectly apparent that Congress intended to accord to members of the foreign service facing separation for cause a traditional grievance hearing with the full panoply of procedural rights, at the conclusion of which the Board would "act", i.e., make a decision.

Moreover, why would Congress, which had recently created the Foreign Service Grievance Board and established it as a body of five "independent, distinguished citizens of the United States, well known for their integrity, who are not employees of the Department or members of the Service", then turn around and give it the non-function of merely "eliciting" the cause for termination without requiring the making of a finding, as the government argues? Not only would that conclusion fly in the face of the language of both Sections 610 and 1106, it would, again, simply make no sense in terms of Congress' intent to up-grade the composition and functions of the new Foreign Service Grievance Board.

Significantly, Congress concluded in 1980, when it transferred the responsibility under Section 610(a) for separation for cause hearings from the pre-existing Board of the Foreign Service to the Foreign Service Grievance Board, that the latter was "the best qualified body to *adjudicate* these cases" (emphasis added). In making this change, the Senate Committee Report contrasted the new adjudicatory function of the Foreign Service Grievance Board with the purely "advisory capacity" in which the "Board of the Foreign Service has heretofore performed this function". S.Rep. No. 913, 96th Cong., 2d Sess. 56, reprinted in 1980 U.S.Code Cong. & Admin.News 4419, 4473. The clear thrust of this comparison is that Congress intended that the newly created Board would "adjudicate", i.e., *decide* cases.[13]

Finally, our Court of Appeals has already addressed the issue before this Court, albeit in a slightly different procedural context,[14] and concluded that the "import of this section [610(a)(2) ] is to guarantee the FSO—who is already entitled to a hearing under the grievance procedures outlined in sections 1101–1110—that he can be separated only *after* the grievance hearing has been held *and cause for separation established* ", Costello v. Agency for International Development, supra, 843 F.2d at 543 (emphasis added, except for "after" which was underlined in original).

Recognizing the significance of the Court's holding in *Costello*, the government tries to suggest that the Court's rationale is no longer good law in this circuit and that it has been substantially weakened by *Miller v. Baker*, 969 F.2d 1098 (D.C.Cir.1992). For several reasons, this argument fails.

First, *Costello* and *Miller* dealt with different issues. *Costello*, as discussed above, concerned the authority of the Board to award attorneys fees in separation for cause cases involving tenured foreign service officers, whereas *Miller* concerned the refusal by the Secretary to retain and grant tenure to a probationary foreign service officer. It is noteworthy that, even with regard to proba-

---

**13.** In response to this language in the Senate report, *supra*, the government in its Opposition to Plaintiff's Motion for Summary Judgment, at p. 15–16, cites the definition of "adjudicatory process" in *Black's Law Dictionary, Fifth Edition*, p. 40 (1979), and argues that an " 'adjudicatory process' is a method of adjudicating factual disputes, used generally in reference to administrative proceedings in contrast to judicial proceedings".

Curiously, the government fails to cite the definition of the word actually used in the Senate report, *supra*, which is "adjudicate", defined as follows in *Black's Law Dictionary, Sixth Edition*, p. 42 (1990): "to settle in the exercise of judicial authority. To determine finally. Synonymous with *adjudge* in its strictest sense." "Adjudge" is then defined by *Black's, id.*, as "To pass on judicially, to decide, settle, or decree, or to sen-

tence or condemn ... Implies a judicial determination of a fact, and the entry of a judgment." In short, the government's reliance on a definition of a word which was not used in the legislative history is less than convincing, especially when the definition of the word that was used in the legislative history supports the Plaintiff's interpretation of the statute.

**14.** In *Costello*, the Court of Appeals held that in a separation for cause hearing under Section 610(a)(2), the Foreign Service Grievance Board has the authority to award attorneys fees to a prevailing Officer. In the course of reaching that decision, the Court of Appeals also concluded "that a separation-for-cause action under section 610(a)(2) is a 'grievance,' as that term is defined in section 1101," 843 F.2d at 545.

tionary officers, *Miller* upheld the power of the Board to suspend the Secretary's proposed separation of a non-tenured officer until it resolved the merits of the officer's grievable claim about inaccurate personnel records (on which the underlying tenure decision may have rested), 969 F.2d at 1102. Significantly, the Court also noted that the decision reached by the Board on the underlying grievance after a full hearing was final and binding upon the Secretary, 969 F.2d at 1098.

Second, *Miller* never even mentions *Costello*. Third, since *Costello* was decided only four years earlier, by two of the same judges who sat on *Miller* (Judges Wald and Williams), it is difficult to conclude that the Court meant to either overrule or retreat from it without saying one word about its existence or current viability.

For these reasons, the Court is persuaded that *Costello* has not been weakened and remains good law in this Circuit.

C. Section 1107 of the Foreign Service Act

Section 1107 of the Act, entitled "Foreign Service Grievance Board decisions" is fully consistent with and supportive of the foregoing analysis. Section 1107(c) states that "[e]xcept as provided in subsection (d) of this section, decisions of the Board … shall be final, subject only to judicial review as provided in section 4140 of this title." [15]

Subsection (d) gives the Board authority to make "recommendations"—not final decisions—relating to promotion, tenure or assignment of a grieving foreign service officer or disciplinary action against an employee. Thereafter, the Secretary "shall make a written decision on the recommendation of the Board within 30 days" and "shall implement the recommendation of the Board within 30 days" and "shall implement the recommendation of the Board except to the extent that, in a decision made within that 30-day period,

the Secretary rejects the recommendation in whole or in part on the basis of a determination that implementation of the recommendation would be contrary to law or would adversely affect the foreign policy or national security of the United States". Within that same 30-day period the Secretary shall, pursuant to Section 1107(d)(3)(A), submit his or her decision to the Board and ask for reconsideration of its recommendation. Within 30 days thereafter, pursuant to Section 1107(d)(3)(B)(i), the Board shall make a recommendation to the Secretary regarding its original recommendation. Finally, pursuant to Section 1107(d)(3)(C), this recommendation of the Board made after its reconsideration, "shall be considered a final action for purposes of section 4140 [relating to judicial review] of this title and shall be implemented by the Secretary." [16]

 Thus, pursuant to the rather convoluted statutory scheme established in Section 1107, the Board holds a hearing and makes a recommendation; the Secretary must implement the Board's recommendation unless he issues a decision within 30 days rejecting it and requesting its reconsideration by the Board; the Board must reconsider within 30 days and whatever decision it reaches on reconsideration is considered final for purposes of judicial review. Thus, even if the Secretary objects to a Board recommendation, the Board's decision after reconsideration "shall be considered a final action," *Mitchell v. Christopher,* 996 F.2d 375, 377 (D.C.Cir.1993).

 While it is far from clear that Section 1107 applies in this case, assuming *arguendo* that it does, it is apparent that the Secretary failed to follow its procedural steps since he did not, as Section 1107(d)(1) requires, "make a written decision on the recommendation of the Board within 30 days after receiving the recommendation", nor did he within that same 30 day period "reject … the recommendation in whole or in part".

---

**15.** Section 4140 provides that:

Any aggrieved party may obtain judicial review of a final action of the Secretary or the Board on any grievance in the district courts of the United States in accordance with the standards set forth in chapter 7 of Title 5.

**16.** In light of Section 1107(d)(3)(C), the statute's use of the word "recommendation" must be considered a misnomer.

Rather, on June 12, 1992, he filed with the Board a "Request for Clarification" which he argued was akin to a motion for reconsideration. On August 4, 1992, the Board denied the Request and the Department took no further action with respect to Ms. Salleh's employment until June 1, 1993, one year later,[17] when the Secretary issued an order terminating her employment.

Thus, even if Section 1107(d) applies [18], it is clear that the Secretary waived his rights because he never issued a written decision within 30 days of receipt of the Board's recommendation, never rejected that recommendation, and never asked for Board reconsideration. In the absence of compliance with the procedural requirements of Section 1107(d), the Board's decision must be seen as final and binding on the Secretary under either Section 1107(b)(3) and (c) [19] or under 1107(d)(3)(C).[20] Under either alternative, the statute mandates that the Secretary "shall" implement the Board's recommendation.

█ Finally, even if the statute is applicable, and the Secretary is deemed to have complied with it, it is clear that the Board made a recommendation confirming its original recommendation, pursuant to Section 4137(d)(3)(B), and that such recommendation, pursuant to Section 4137(d)(3)(C) "shall be considered a final action for purposes of section 4140 of this title, and shall be implemented by the Secretary."

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Foreign Service Act of 1980 does not authorize the Secretary of State to overrule or reverse a decision of the Foreign Service Grievance Board that cause for separation of a member has not been established at a hearing. The plain words of the statute preclude termination of a foreign service officer unless such cause has been established at a hearing held by the Board. No such cause was established in the present case. Nothing in the Act authorizes the Secretary to reverse the Board's decision. The relevant legislative history, brief as it may be, demonstrates that Congress created an independent, prestigious Board to adjudicate termination for cause cases to replace the pre-existing advisory Board of Foreign Service. Finally, the *Costello* case from our Court of Appeals supports the conclusion reached by this Court.

In sum, the Board's interpretation of Section 610 of the Act, that its determination is final and binding on the Secretary, subject to judicial review, "is reasonable, consistent with the statutory purpose, and not in conflict with the statute's plain language," *Coal Employment Project v. Dole, supra,* 889 F.2d at 1131.

█ Consequently, the Court concludes that the Secretary's separation of Ms. Salleh from the Foreign Service and his subsequent failure to reinstate her after being advised by the Board that he did not possess the legal authority to terminate her, was contrary to statute and therefore that his actions were *ultra vires.*

█ Plaintiff has requested a writ of mandamus, pursuant to 28 U.S.C. § 1361, to compel the Secretary to implement the Board's decision. Plaintiff has satisfied, for the reasons already indicated, two of the

---

**17.** It should be noted that the Secretary did not seek judicial review of the Board's decision, pursuant to Section 1110 of the Act. Instead, one year after Ms. Salleh filed the instant lawsuit, the Secretary filed the lawsuit referred to in fn. 6, *supra.*

**18.** The government takes the position that it does not apply to separations for cause; the Plaintiff's position on applicability is less than clear. The interplay between Sections 610 and 1107 is at best murky.

**19.** Section 1107(b)(3) gives the Board the authority, if it finds a grievance to be meritorious, "to

direct the Department to retain in the Service a member whose separation would be in consequence of the matter by which the member is aggrieved", and Section 1107(c) makes that decision final, subject only to judicial review as provided in Section 4140.

**20.** Section 1107(d)(3)(C) provides that the recommendation made by the Board after reconsidering its original recommendation at the request of the Secretary "shall be considered a final action for purposes of Section 4140 of this title, and shall be implemented by the Secretary."

requirements for issuance of a writ: she has established a right to the relief she seeks and a clear duty on the part of Defendant to accord her that relief. *See Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir.1969). The Court believes that, despite the refusal of the Secretary to accord Ms. Salleh relief in the past, the issuance of declaratory relief at this time will provide her with an adequate remedy. Therefore the third requirement for issuance of a writ of mandamus, lack of an adequate remedy, has not been established and the Court deems issuance of a writ of mandamus unnecessary.

WHEREFORE, it is this day of February, 1995, hereby

ORDERED, that Plaintiff's Motion for Summary Judgment is **granted;** and it is further

ORDERED, that Defendant's Motion for Summary Judgment is **denied;** and it is further

ORDERED, that Plaintiff's request for issuance of a writ of mandamus is hereby **denied.**